WILLIAM LIVINGHOUSE V. STATE OF NEBRASKA.

FILED MAY 3, 1906.   No. 14,567.

1. **Rape:** EVIDENCE.   The uncorroborated evidence of the prosecutrix is insufficient to sustain a conviction of the crime of statutory rape.

2. ———: ———.   Where in such a case the testimony of the prose-cutrix lacks the element of probability, and the corroborating evidence is of a doubtful character, a judgment of conviction will be set aside for want of sufficient evidence to sustain it.

ERROR to the district court for Wayne county:   JOHN F. BOYD, JUDGE.   *Reversed.*

*F. A. Berry* and *Allen & Reed,* for plaintiff in error.

*Norris Brown, Attorney General,* and *W. T. Thompson, contra.*

BARNES, J.

William Livinghouse was convicted in the district court for Wayne county of the crime of statutory rape upon the person of one Maude McRoberts, a female child under 15 years of age, and was sentenced to the state penitentiary for a term of three years.   He brings the case to this court by petition in error, and will hereafter be called the accused.

His first contention is that the verdict and judgment are not supported by sufficient evidence.   We shall not attempt to quote the evidence produced on the trial, but shall content ourselves with a summary statement of it.   The prose-cutrix testified, in substance, that she lived with her mother and step-father in Wayne county, Nebraska; that she was 15 years old on July 16, 1905; that the first time she saw the accused was in the latter part of August, 1904, when he came to her father's place to work; that she left home the following Friday and was gone two months, re-turning the last Saturday in October; that she was at

home thereafter during all the time the accused worked for her father, and that he made his home there until about the time he was arrested; that she slept up-stairs, in the south room, and in the same bed with her sister Edna, there being two rooms up-stairs, and the accused slept in the north room, her parents sleeping down-stairs. She also stated that her two brothers, each 11 years old, occupied another bed in the same room with her and her sister; that the accused came into her room about midnight on or about the middle of November, 1904, got into bed with her and her sister, told her that he would not hurt her, charged her not to tell anyone, and had sexual intercourse with her; that she neither consented nor resisted; that she told no one about the matter until about the 8th day of May following, when it was discovered by others that she was pregnant; that the accused was a man over 18 and about 45 years of age; that the door between the rooms where she and the accused slept was left open at his request, because it was so warm up-stairs.

Edna McRoberts, the sister of the prosecutrix, testified that she was 13 years old, and was living at home all of the time the accused worked for her father; that he came there about the first of August, 1904; that she slept in the room with her sister every night during the month of November of that year; that she saw the accused in the room where she and her sister slept during that month, in the night-time, at least four or five times; that when he came into the room he would stand by the bed on the side where her sister slept; that he would stand there from five to ten minutes, and then go out; that he never spoke to them, and, to use her own words, "I never saw him do anything." It appears that she never told her parents, nor talked to her sister about the matter. She further testified that she was awake about midnight every night during the month of November, 1904, and she was sure of that fact because she always heard the clock strike 12.

Charles E. West, the step-father of the prosecutrix, stated that the accused was employed by him during the months

·of October and November, 1904, and up to about May 8, 1905; that the defendant said to him, when he paid him his wages, which was at or about the time of his arrest: "You take the money home to the girl, she needs it worse than I do."

Mrs. Laura West, mother of the prosecutrix, testified, in substance, that Maude was 15 years old on the 16th day of July, 1905; that the accused began to work for her husband on August 24, 1904, and left their place May 8, 1905; that he was about 45 years old; that she had a conversation with him in Epler's store, in the town of Wayne, on May 8, 1905, and just before he was arrested, the substance of which she gave as follows: "He was walking along the sidewalk with Mr. West, and I was in Mr. Epler's store. He came in there, and wanted to know if I would talk to him. I told him, yes, I would talk to him. He called me in the back store, and says: 'Let's go back there so nobody will hear us.' He says to me: 'Mrs. West, can't we settle this some way?' He says: 'I'm willing to settle in any way you folks say.' He says: 'I'll settle it any way on God Almighty's earth that you folks say.' I says: 'I don't know what we will do with you.' He then said if we would settle it he would see that the child, or girl never would want for anything while he lived, and I told him that—I told him that I didn't know. I started away, walked away. He says to me: 'Just wait a minute; I want to talk one word more.' He was crying. He says: 'If you folks send me up to the pen, my character would be ruined for life.' I says: 'What about the girl's character?' He says: 'I will see that the girl's character will never be hurt.' I started to walk away again and he called me back the third time to talk to me; said he just wanted to say another word; said if we would settle he would settle any way we said. I turned and walked off and left him standing there crying." She further testified that a child was born to the prosecutrix on July 10, 1905. The prosecutrix also testified that she had a conversation with the accused on the 8th day of May, 1905, while she was in the cellar at their house skimming

milk; that he asked her if she was going to have him arrested, and she told him that she did not know; that he then asked her if she would marry him. On cross-examination she testified that she was crying when the accused was talking to her in the cellar; that he inquired if he was the father of the child and she told him he was, that she knew he was the father of her unborn child because she had had no intercourse with any other person.

The accused testified in his own behalf, and denied positively that he ever had sexual intercourse with the prosecutrix; denied that he was ever in her room at any time when she was there; denied that he ever told her stepfather to take the money home to the girl, that she needed it worse than he did. He admitted that he had a conversation with Mrs. McRoberts in Epler's store in Wayne, but denied that he ever made the statements testified to by her. He gave the conversation as follows: "Well, I just walked in there, and asked what she accused me of that trouble for. She said: 'I had ruined the girl for life.' I told her I had not. That I was not to blame for anything of the kind. I did not tell her that I would marry or support the girl." The foregoing is the substance of all of the evidence introduced on the trial.

The rule is well established that to sustain a conviction of the crime of rape the evidence of the prosecutrix must be corroborated; but this does not mean that there must be other evidence as to the main fact of sexual intercourse. It is sufficient if corroborating facts and circumstances be shown which tend to substantiate the truth of her statement. The charge called statutory rape is one easy to make, difficult to prove, and more difficult to be defended against. It is one which naturally creates a prejudice against a person alleged to have committed it, and it is the duty of the courts to carefully scrutinize the evidence in such cases; and where, as in this case, the story of the prosecutrix lacks the element of probability, and few, if any, corroborating circumstances are shown, to refuse to sustain a conviction. It appears from the record that the

prosecutrix was away from home, and in the village of Randolph, for about two months next before the 28th day of October, 1904. It also appears that her child was born on the 10th day of July, 1905. There is no evidence in the record showing or tending to show that its birth was premature, and when we consider the usual period of gestation (about 280 days), with the fact that the child was born about 50 days short of that time, it would seem that the pregnancy of the prosecutrix and the birth of her child, should be given but little weight as a circumstance corroborating her testimony of the principal fact. It is contended by the state, however, that the alleged statements of the accused, testified to by the step-father and the mother of the prosecutrix, amount to a sufficient corroboration of her testimony to sustain the judgment of the trial court. The corroboration in this case, to say the most of it, is extremely slight. If the evidence of Edna McRoberts is to be believed, then the act of sexual intercourse between the prosecutrix and the accused, as testified to by her, could not have taken place. It appears that the accused at all times denied that he ever had sexual intercourse with the prosecutrix, and never directly admitted his guilt in any of the conversations with the mother and step-father of the prosecutrix; that on the trial he gave his own version of the conversations had with those witnesses, which differed materially from the statements made by them. So it would seem from a careful consideration of the evidence that it was insufficient to establish the guilt of the accused beyond a reasonable doubt. Indeed, it appears that the jury were in doubt of his guilt, for by their verdict they recommended him to the mercy of the court, and so, without hesitation, we have reached the conclusion that the evidence does not sustain the verdict. Having thus disposed of the case, it is neither necessary nor proper for us to consider any of the other errors assigned by the accused.

For the foregoing reason, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.